The judgment of the court was pronounced by
Rost, J.
The plaintiffs have enjoined the collection of a special tax, laid in 1848 upon their lands in the parish of Concordia, for the construction of a levee, under the following ordinance:
“ Resolvod, That a special tax be levied of ten cents per acre, on cultivated lands, and of five cents per acre on uncultivated lands within the parish, to be collected as soon as practicable, in cash, and the same to be appropriated to the construction of a levee from A. C. Hender’son’s plantation to the point opposite Ellis’s cliffs, and that the land commissioner of the second ward be, and he is-hereby required to suspend the calling out of hands for the purpose of constructing the aforesaid levee.”
The grounds upon which they rely are, that the police jury had no authority to impose a special tax, and that the tax is unequal and unjust, and in violation of the Constitution and laws of the State. That a law passed in 1842, provided ample means for the making of this and other levees of the same class, requiring that they should be made by requisition ; but that the defendants have, by the passage of illegal ordinances, applied the annual levee tax to purposes not specified in the law. They ask that the defendants be compelled to show whether, since 1842, the levee tax has been appropriated as the law requires. The answer admits the levying of the tax und'er the above ordinance, and denies all the other allegations of the petition. There was judgment in favor of the defendants dissolving the injunction with damages ; and the plaintiffs appealed.
Before going into the merits of the case, we will •premise that the plaintiffs’ counsel admit the light of the police jury to impose an annual levee tax of ten cents per acre on cultivated lands, and five cents per acre, on uncultivated lands, under an ordinance passed in 1841, and that the levee tax for the year 1848 was only half of that amount; so that one-half of the special tax might have been levied under those ordinances, supposing that they were to receive the interpretation put upon them by the plaintiffs.
When, in 1829, a general law relative to roads and levees was passed, a section of that law provided that it should not apply to the parish of Concordia, except *404 go far as adopted by the police jury of that parish, and that the said police jury should have plenary and unlimited power to make such enactments, conoern*nS roads and levees, as they might deem.necessary and proper, including the power to authorize the assessment and collection of taxes which they might deem necessary, on the private land claims within any levee district established ■by them.
A law passed in 1833, exempted all the parishes situated on the banks of the Bfississippi river from the operation of the act of 1829, and authorized the police’jury of these parishes to pass all such ordinances as they might deem necessary, relative to roads and levees, ditches and bridges, and to impose such fines and penalties to enforce the same as they might deem proper and expedient ; those fines and penalties to be recovered and enforced by indictment or information before any competent court.
It appears, then, that ,the power of the Legislature, on the subject of roads and levees, has been delegated to the other river parishes as well as to the parish of Concordia. Under .that delegation, th.e power of those parishes to impose a special levee tax in ca?es of necessity, cannot be doubted ; and the first question for our consideration is, whether the grant of a similar power originally made to the police jury of the parish of Concordia, has been so limited by subsequent legislation, as to leave them in any case without the means of constructing works admitted to be of indispensable necessity.
In 1841, the Legislature passed an act relative to roads and levees in the parish of Concordia. The sixth section of that act authorized the police jury to impose a tax which was not to exceed five cents per acre on cultivated, and three cents per acre on uncultivated lands. In the same year, the police jury passed two ordinances, regulating with great wisdom and foresight, the subject of roads and levees, and decreeing an annual levee tax of ten cents per acre, on cultivated, and fiye cents per acre on uncultivated lands, in violation of the act of 1841.
In 1842, the Legislature passed another act approving and adopting those ordinances, declaring them to have legal force and effect, and repealing the act of 1841. It is urged, that those ordinances have thus become laws of the State, and that they have limited the power of the police jury to the levying of a tax of ten cents per acre on cultivated, and five cents on uncultivated lands, for each year. The two ordinances passed by the police jury in 1841, assert, in the piost unqualified manner, the unlimited power of that body over the subject of roads and levees, and their authority to impose any taxes to carry those powers into effect. The preamble of the act of 1842 shows, that the object of the Legislature in passing it was to remove doubts which had arisen, whether the police jury had power to pass those ordinances, and the act itself recognizing fully the existence of the power, ordains that “ each and eyery part of those ordinances be and the same are hereby approved and adopted, and declared to have full and legal force and effect.”
Now, it appears to ps, that if the most effectual way of discovering the true meaning of a law is, by considering the reason and spirit of it, or the cause Which induced the Legislature to enact it, the act of 1842 cannot be construed so as to limit the powers of the police jury to the provisions of the ordinances. That act recognizes the power claimed by them, and without affixing limits to it, simply sanctions the manner in which it has been exercised. By giving those ordinances the sanction of an act of the Legislature, the police jury have debarred themselves of the right of repealing them at pleasure. But, we do not under *405 stand that they have thereby surrendered powers previously vested in them, and not enumerated therein. The power of levying any taxes they may deem necessary, is one of those expressly asserted in the preamble of the ordinances which the Legislature has approved and adopted in all their parts.
The annual lovee tax cannot exceed the limit fixed by the ordinances of 1841; but, in cases of necessity those ordinances do not, in our opinion, take from the police jury the power of imposing a special tax.' Taking a common sense view of the subject, the power of the police jury, though of course not unlimited, should be sufficiently ample to meet all the emergencies which call for its exercise. If, in any case after the proceeds of the annual tax had been expended in necessary works and repairs, sudden abrasions of the bank of the river should make it necessary to construct large extents of levee, we would, with great reluctance, adopt a construction which would deprive police juries of the means of accomplishing that indispensable object. It is true, that the ordinances of 1841 provide for the making of levees, in cases like the present, by a requisition; but, we do not consider this disposition as restrictive of the powers vested in the police jury to adopt other means. Had a requisition been resorted to, as there was no money in the treasury, a special tax would still have been required.
It is urged, that the necessity for the special tax was only created by the mal-administration of the defendants, by dispensing a large portion of the inhabitants of the parish from paying the levee tax, and by the application of the portion paid to objects different from those for which it was intended. The complaint is, that the defendants disregard the act of the Legislature, requiring the levee fund in each ward to be kept distinct and separate, and to be applied to the making and repairing certain specified levees ; that they have made of it a common parish fund; and further, that they have passed an ordinance providing for the payment to each front proprietor of two dollars per rod for the levees constrxxcted by them, or by those under whom they hold ; the effect of which ordinance has been to prevent any thing from coming into the treasury, for the purposes contemplated by the ordinance of 1841.
The answer to these grounds is, that they present questions of administration, which, if entertained in the present form of action, would throw upon us the administration of every parish, and of every municipal corporation in the State. Supposing that a case might be presented in which it would be in our power to redress the wrong complained of; we are satisfied that this is not such a case. Admitting all the acts of mal-administration alleged, it is nevertheless time, that the treasury was empty ; that the work to be constructed was indispensable to the safety of a portion of the parish; and that whether constructed by requisition, or by contract, a tax was necessary to pay for it. Under: that state of facts, we would not be justified in declaring the tax illegal, because it might have been unnecessary, under a better administration of the affairs of the parish. Ye cannot give a remedy by which the local government would be rendered unable to perform its appropriate functions. Egerton v. Municipality Number Three, 1 Ann. 435.
If the power be conceded, it is one of the consequences of our form of government that the correction of abuses, in the administrative exercise of that power, must, to a great extent, be left to the people, who have it once a year in their power to select proper agents. Under the view taken in the case of Second Municipality v. Duncan, 2d Ann. 182, the tax was not unconstitutional, for not being an ad valorem tax; and the ground that it was illegal, because a *406 portion of the land owners of the parish was exempted from it, is not sustained by the evidence.
It was urged, for the first time in this court, that the ordinance imposing the tax was illegal, because it was passed by less than a majority of the members elect of the police jury, in violation of the act of 1847, relative to police juries ; which provides that a majority of all the members elect shall be required to levy any parish tax.' We do not consider the evidence adduced to show the number of members elect for the year in which the tax was laid as conclusive; and, moreover, this is not one of the grounds upon which the injunction was obtained.
For the reasons assigned, it is ordered, that the judgment in this case be affirmed, with costs.